70753. SUMMERLIN v. JOHNSON.
(335 SE2d 879)

BIRDSONG, Presiding Judge.

This is an interlocutory appeal. Johnson is the plaintiff in this personal injury case; her attorney is Bordeaux. Jones, her attorney's partner, represented defendant Summerlin in 1979 in defense of a voluntary manslaughter or murder charge and in 1981 in defense of a driving while intoxicated (DUI) charge. The instant suit pleads punitive damages, and we recently held that evidence of prior DUIs is admissible on the issue of punitive damages. *Thompson v. Moore*, 174 Ga. App. 331 (329 SE2d 914). The trial court denied Summerlin's motion to disqualify which is based on conflict of interest, the attorney's

duty to preserve confidences, and the appearance of impropriety under the attorneys' Code of Professional Responsibility, Canons 4, 5, and 9.

The trial court found Summerlin failed to demonstrate what "reasonable inferences" may be drawn as to whether the confidential information allegedly given attorney Jones by Summerlin would have been given to any lawyer representing Summerlin in the prior criminal offenses, according to the rules established in *Dodson v. Floyd*, 529 FSupp. 1056, 1061. The trial court further found there is no substantial relationship between any confidences learned by attorney Jones in the previous representations of Summerlin, and those issues raised in this civil case. *Held*:

1. If the lawyer is required to decline employment, no partner or associate of his firm may accept such employment (DR5-105 (d)), because a lawyer may legitimately disclose and discuss the affairs of a client with his partners or associates of his firm, unless the client otherwise directs (Ethical Consideration 4-2), and a lawyer is required to avoid even the appearance of impropriety. Canon 9.

We decline to adopt the three-part test established by the federal court in *Dodson*, supra, for determination of whether such a "substantial relationship" exists between the prior and present representations as to amount to an ethical violation warranting disqualification. There is merit in making a "factual reconstruction of the scope of the prior legal representation," (*Dodson*, supra, p. 1061) so as to determine whether the alleged confidential information is relevant to the issues in the pending suit (see *Duncan v. Merrill Lynch*, 646 F2d 1020, 1032), but we fail to see how the problem is benefitted by the second inquiry into whether it is "reasonable to infer that the confidential information allegedly given would have been given to any lawyer representing a client in those matters." Aside from being unnecessarily muddy, that second test requires some kind of inquiry into whether there was any confidential information given the attorney, and what it might have been.

To the contrary, there is a public policy prohibition from making any inquiry into what, if any, confidential information was conveyed to the attorney in his prior representation. Apart from an understanding of the scope of the two legal representations, the only question to be determined is whether the two cases are "substantially related." If they are, "it is no answer for the attorney, who has appeared for the party in one of them, to say, when he attempts to appear against that party in the action, that he had no confidential information from his client. The rule must of necessity be that if an attorney has been employed in a matter and has appeared in court in connection therewith, he cannot thereafter accept employment and appear in a case against his former client, where under the latter employment he must neces-

sarily assume a position contrary to that involved in his former employment. If the disqualification of an attorney in such case were made to depend on whether he had had any confidential communications with his former client or had gained information that might be used to [the former client's] prejudice, the court would be called upon to investigate what, if any, communications had taken place between the parties. To make any such inquiry would, it seems to us, lead to a violation of the confidential relationship which should exist between attorney and client. To require the client to say what communications had taken place, or to permit the attorney to go into the matter even to the extent of testifying that there were no confidential communications, would be a violation of the rule." *Tilley v. King*, 190 Ga. 421, 424-425 (9 SE2d 670). The party seeking disqualification is not required to point to specific confidences revealed to his attorney that are relevant to the pending case; instead, he " 'need only show that the matters embraced within the pending suit are *substantially related* to the matters or cause of action wherein the attorney previously represented him.' [Cits.]" *Duncan v. Merrill Lynch*, supra, p. 1028. If such a substantial relationship between the cases is shown, the court will then irrebuttably presume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. *Glover v. Libman*, 578 FSupp. 748, 759.

There is nothing in Georgia case law that requires the party seeking disqualification to show what confidences might be betrayed. In *Stoddard v. Bd. of Tax Assessors*, 173 Ga. App. 467 (326 SE2d 827), we did not require the client to disclose what confidences were conveyed, but held that the client must at least show some harm or prejudice by the current representation of its former attorney. In effect, there was found to be no "substantial relation" between the two cases involved in *Stoddard* because the client could point to no similarities or related issues, although the cases seemed alike. Mere superficial resemblance between the two cases will not suffice to require disqualification. *Jackson v. J. C. Penney Co.*, 521 FSupp. 1032, 1035.

The reasons for requiring disqualification of an attorney who formerly represented his client's opponent in a substantially related case are many. Canon 4 of the Code of Professional Responsibility (Appendix, 252 Ga. 581) describes the fiduciary relation between attorney and client which requires the preservation of confidences and secrets of the client. That preservation of confidences is necessary to the full development of facts essential to proper representation of the client and encourages laymen to seek early legal assistance. A lawyer cannot use information acquired in the course of the representation of a client to his later disadvantage, or for the advantage of another. The obligation to preserve confidences continues after employment is

terminated.

In *Bugg v. Chevron Chemical Co.*, 224 Ga. 809, 813 (165 SE2d 135), the Supreme Court went so far as to say: "One treatise declares that '. . . an attorney cannot, upon the termination of an employment, represent one whose interest in the transaction is adverse to that of his former client. . . . It is both the right and the duty of the court to prohibit or restrain an attorney from acting for one whose interest is adverse to that of a former client.' 5 AmJur 297-298, Attorneys at Law, § 66. Another treatise states that '[t]he incapacity of an attorney to represent adverse interests also disqualifies him from representing interests which are in conflict with the interest of his former client, for the obligation of fidelity and loyalty still continues.' [Cits.]" Canon 5 prohibits an attorney from acting in a representative capacity involving conflicts of interest and requires him to refuse to accept employment if the interests of another client may impair his independent professional judgment. If the lawyer cannot represent each client adequately, multiple representation is prohibited. "A mere *potential* of inadequate representation that is caused by a split of loyalties is a harm that the conflict of interest rules were designed to protect." *Glover v. Libman*, supra, p. 763. The underlying purpose of Canon 5 is to ensure the absolute and unfettered loyalty of an attorney to a particular client. Id.

We have no difficulty in finding a substantial, indeed a direct, relation between the appellant's plea of guilty for the offense of DUI, and this civil suit against him in which that plea can be proved in support of punitive damages. The appellee Johnson maintains that "it is not the confidential information presumably received in the prior representations which will be of consequence; rather it will be the fact of the prior crime itself and its disposition, matters of public record which will be relevant and admissible." But there are many subtle, perhaps unconscious ways that confidential information, *which we presume was conveyed* (*Tilley v. King*, supra), can be used, and indeed must be used by the attorney in his representation of Johnson if he is to devote his entire loyalties to Johnson's claim for punitive damages. As held in *Clifton v. State*, 187 Ga. 502, 504-505 (2 SE2d 102), " 'It is not sufficient to say that the law will not permit him to disclose any fact which may have been communicated to him. "If he knows the vulnerable points in the case . . . there are many ways by which those points might be made available . . . besides disclosing them as a witness." *Gaulden v. State*, 11 Ga. 47.' "

In *Gaulden v. State*, supra, pp. 49-50, the Supreme Court held that a solicitor general who obtained an indictment against a defendant was disqualified to later represent him in defense of the crime. "His position, as the counsel for the State, enables him to learn the difficulties which may stand in the way of the conviction of one who is

really guilty, which no other person would be as likely to know, for the reason, that his communication with the prosecutor, the witnesses, and the Grand Jury, afford him the means of ascertaining many facts, which only those who are *officially* connected with the government, can know. Shall he be permitted to make use of the privilege thus officially conferred upon him, while in the discharge of his duties as counsel for the State, for the purpose of defending those who have been accused of crime during his official term of office, and that, too, for a reward paid by them to him, for such service?'' It was held that public policy forbade the attorney to represent the defense, because "such a practice will have a tendency to greatly embarrass the administration of the Criminal Law; for . . . prosecutors and others . . . will necessarily be restrained from communicating freely with the State's counsel, when he may be employed at the next term of the court to defend the indicted culprit. . . . If he has knowledge of facts, derived from his official connection with the prosecution, which will operate to the prejudice of the State, and he is permitted to act as counsel for the defendant, that knowledge will be made available in the defense. . . ." Accord *Conley v. Arnold*, 93 Ga. 823 (20 SE 762).

Some hypotheticals serve to prove the wisdom of not allowing a party's previous attorney to represent another against that party and use against him facts and information arising out of the prior representation. If, in the course of his previous representations of a party, the attorney learned the party had used drugs or perhaps been committed to an institution or had epileptic seizures or attempted suicide, or some such thing, could the attorney later use these facts against that party in a lawsuit? And, if those facts were relevant in the later lawsuit, or could lead to relevant evidence, how could the attorney *not* use this information and still devote his full energies and loyalties to his new client? What if the former client wants to testify that he really was not guilty of DUI but was only advised to plead guilty; can the attorney be heard to testify in rebuttal against his former client, and reveal his confidences? Although the attorney might use against his former client only a fact of public record, such as a DUI conviction, could the former client be blamed for feeling he was betrayed, and that some confidence he gave might likewise be revealed? For that matter, if a person knows he might face his lawyer in another lawsuit where something he has said or done, however insignificant it seemed at the time, could be used against him, can we expect him to repose the full confidence in his lawyer as the law anticipates he should? In *General Contract Purchase Corp. v. Armour*, 125 F2d 147, the attorney who represented General Contract's employee Scott in defense of the crime of criminal negligence in a traffic accident, later turned up as attorney for the plaintiff in the civil action

arising out of the same incident, in which the plaintiff sought damages for gross negligence. The defendant's motion to disqualify was held not waived, and the federal court said: "In view of the fact that counsel for plaintiffs were insisting not merely that Scott was civilly negligent but that he was grossly so, and therefore criminally negligent, it would take the clearest kind of evidence of waiver to support *a finding that their former client in the criminal proceeding was willing for them to fasten criminal liability on him in order to obtain a verdict against him for their new client,* and had waived his right to object to their doing so." (Emphasis supplied.) (Id. p. 149.) We have not the slightest idea that anything intentionally wrong or unbecoming on this attorney's part was intended, but we are inclined to think that his best intentions aside, having assisted and advised Summerlin to plead guilty to DUI, the same attorney or his partner should not be allowed, over his objection, to later use that plea against him in a punitive measure on behalf of another. See also *Bugg v. Chevron Chemical Co.*, supra, p. 813. Canon 9 requires attorneys to avoid even the appearance of impropriety.

2. Canon 5 and Directory Rule 5-105 (D) prohibit the partner or associate of the attorney disqualified from employment under DR 5-105 from accepting or continuing the employment.

3. This civil lawsuit was filed January 26, 1984. Some discovery ensued, including Summerlin's deposition, before Summerlin moved to disqualify Bordeaux and his law firm on June 1, 1984. We find no waiver of the right to so move. The motion was made only four months from the institution of the lawsuit, which under the circumstances we consider reasonably prompt. See *Jackson v. J. C. Penney*, supra, pp. 1034-1035. See also *Conley v. Arnold*, supra, where the client waited until after trial to move to disqualify and thereby waived his rights in that regard. It is clear in the record that Summerlin's present attorney initially operated under the assumption, which was correct until we decided *Thompson v. Moore*, supra, last term, that Johnson's lawyer could not introduce evidence of the DUI plea in this civil case; and he moved to disqualify Bordeaux immediately upon learning at Summerlin's deposition on May 30, that Bordeaux intended to explore Summerlin's previous DUI. We find no waiver in these circumstances and find Johnson's motion to disqualify was timely.

*Judgment reversed. Carley and Sognier, JJ., concur.*

## ON MOTION FOR REHEARING.

The appellee attorneys urge for the first time on motion for rehearing that since the conflict of interest arises only in connection with the use of Summerlin's prior DUI plea to prove punitive dam-

342

ages they should be allowed to represent Johnson in his suit for negligence and to sever the issue of punitive damages in a separate trial, under OCGA § 9-11-42 (b). See also *Chupp v. Henderson*, 134 Ga. App. 808 (216 SE2d 366).

We are inclined to think that the comprehensive language of the Canons of Ethics and in *Bugg v. Chevron Chemical Co.*, 224 Ga. 809, 813 (165 SE2d 135) would prohibit the attorneys from suing Summerlin in a negligence action for which punitive damages will be sought, even in a different trial, on account of a DUI record where the attorneys represented Summerlin. In *Bugg v. Chevron*, supra, p. 813, the Supreme Court quotes, with approval, authorities which stated that "an attorney cannot, upon the termination of an employment, represent one *whose interest in the transaction is adverse* to that of his former client," and that the " 'incapacity of an attorney to *represent adverse interests* also disqualifies him from representing *interests which are in conflict with the interest of his former client, for the obligation of fidelity and loyalty still continues.*' " (Emphasis supplied.) It would prove difficult in many cases for the plaintiff's attorney in a negligence action to pledge his best loyalty to his client, the plaintiff, and completely separate himself from a severed count for punitive damages, which are awardable if the negligence action is successful. If he has information gained through his prior representation of the defendant which is vital to his client's claim for punitive — and we must assume that he has — it would be hard to see how he devotes himself totally to his new client's (the plaintiff's) interest while remaining completely loyal to his former client (the defendant). Moreover, to give complete professional loyalty to his new client's *best interests*, which would necessarily include the plaintiff's entitlement to punitive damage based upon the same incident, the attorney we think would be obliged to convey anything he knew of benefit to the plaintiff, to any other attorneys representing his client's interest in the same affair; and this he cannot do and remain loyal to the defendant, his former client.

The appellee has not made a motion to sever, but if he does, these ethical considerations should be given weight.

*Motion for rehearing denied.*

DECIDED SEPTEMBER 9, 1985 —
REHEARING DENIED OCTOBER 4, 1985 —

*Stephen W. Irving*, for appellant.
*Thomas C. Bordeaux, Jr.*, for appellee.