S97Y0342. IN THE MATTER OF DALE A. ALLISON, JR.
(481 SE2d 211)

PER CURIAM.

This disciplinary proceeding raises two main questions: First, whether the State Bar may take advantage of the two-year tolling provision of the otherwise four-year statute of limitation in disciplinary matters, Bar Rule 4-222 (a),[1] where the victims or potential vic-

---

gives short shrift to these constitutional mandates.

[7] Op. at 636.

[8] 266 Ga. 3 (463 SE2d 472) (1995).

[1] Bar Rule 4-222 provides, in pertinent part:
(a) No proceeding under Part IV, Chapter 2, shall be brought unless a Memorandum of Grievance has been received at State Bar of Georgia headquarters or instituted by the Investigative Panel within four (4) years after the commission of the act. Provided, however, this limitation shall be tolled during any period of time, not

tims could have filed grievances within the four-year statutory period. Second, whether using false names on a client's behalf and assisting a client in using false names in connection with loan, incorporation, and other documents having legal effect, violates professional standards under Bar Rule 4-102 (d). In light of the primary purpose of disciplinary proceedings — to ·protect the public from attorneys who are not qualified to practice law due to incompetence or unprofessional conduct — we hold that where a victim or potential victim does not come forward with a grievance against an attorney within the four-year statute of limitation, the State Bar, through its Investigative Panel, may initiate a proceeding against the attorney within a reasonable time after the State Bar becomes aware of attorney misconduct and may use the two-year tolling provision in so doing. We also hold that an attorney's use of false names on a client's behalf, or assistance of the client in using false names in documents having legal effect, violates Standards 4 and 45 of Bar Rule 4-102 (d).[2] Accordingly, because the Respondent, Dale Allison,. violated Standards 4 and 45 as well as other professional standards of Bar Rule 4-102 (d), and in light of additional aggravating factors, we order Allison disbarred from the practice of law in this State.

### 1. Facts

The facts in this case are undisputed. The special master granted the State Bar's motion for summary judgment based on Allison's admissions in his answer to the Bar's formal complaint and in his responses to the Bar's requests for admission. The special master concluded that Allison had violated Standards 4, 30, 35-37, and 45, and recommended that Allison be disbarred. The review panel unanimously adopted the special master's findings, but recommended that Allison be suspended for three years with conditions for reinstatement.[3]

---

to exceed two (2) years, that the offender or the offense is unknown, the offender's whereabouts are unknown, or the offender's name is removed from the roll of those authorized to practice law in this State.

[2] Standard 4 provides: "A lawyer shall not engage in professional conduct involving dishonesty, fraud, deceit, or wilful misrepresentation. A violation of this standard may be punished by disbarment."

Standard 45 provides:

In his representation of a client, a lawyer shall not: (a) knowingly use perjured testimony or false evidence; (b) knowingly make a false statement of law or fact; (c) participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false; (d) counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent; (e) knowingly engage in other illegal conduct or conduct contrary to a disciplinary rule; (f) institute, cause to be instituted or settle a legal proceeding or claim without obtaining proper authorization from his client.

A violation of this standard may be punished by disbarment.

[3] The conditions are that the suspension be lifted only after the expiration of the three

The facts can be generally divided into three areas involving: corporations Allison assisted his client in establishing; the house where Allison and his wife resided; and two trusts Allison prepared for clients.

(a) *The Corporations*

Dale Allison was a member of the Fortress Center Church and, during the period of time relevant to this proceeding, represented the Church, its pastor, Calvin Simmons, and some of the members of the Church. In 1985 various creditors of Simmons, including some of the Church members, formed an association and obtained a money judgment against Simmons. Thereafter, in 1986 and 1988 respectively, Allison assisted Simmons in forming, and incorporated on Simmons' behalf, two separate entities, Great American Financial Services, Inc. and Great American Development Corporation. On Simmons' behalf, Allison prepared, executed and delivered documents pertaining to the two corporations, including loan documents and documents submitted to the Secretary of State for purposes of establishing the corporations. Allison opened an account for the first corporation with a savings and loan institution, signing as the names of the president and the vice president two fictitious names used by Simmons, "Roth Cody" and "James Pennington"; Allison signed his own name as assistant secretary. In the articles of incorporation of the second corporation, Allison signed another fictitious name used by Simmons, "Jason P. Barclay."

(b) *The House*

In 1984, Allison and his wife purchased a house in Lawrenceville, assuming a first mortgage and giving a second mortgage to the sellers. Allison defaulted on the second mortgage and Simmons agreed to assume the second mortgage and allow Allison and his wife to stay on as tenants. In June 1986, the sellers foreclosed and Allison drafted for the foreclosure certain documents, including a mortgage payment and transfer, and signed or assisted in signing the fictitious name of "James H. Pennington," used by Simmons, to the deed under power of sale used in the transfer. Additionally, Allison directed that an individual notarize the documents although she had not witnessed them being signed.

(c) *The Trusts*

Allison represented Winfred and Lena Burt, members of the Church. On Allison's advice, in January 1987, the Burts conveyed their home into an irrevocable trust for the benefit of their two minor

years and after Allison takes and passes the multi-state ethics section of the State Bar exam or an equivalent examination as required by the Bar, and be certified under the Law Practice Management Program as being knowledgeable of the standards of ethics of the State Bar of Georgia.

daughters. Allison prepared the trust documents, naming "James H. Pennington" as trustee and Allison as successor trustee, and giving the trustee absolute discretion in determining what constituted income from the trust. In August 1987 on Allison's advice, the Burts' minor daughters conveyed their interest in the house into a second irrevocable trust naming Allison as trustee and Calvin Simmons as successor trustee, and providing that the trustee's compensation would be paid to "James H. Pennington." Throughout this time, Allison simultaneously represented the Burts, their children, and Simmons.

2. *The Statute of Limitation Issue*

Although Allison denies that any of his conduct violated any professional standards, he argues the Bar is precluded from proceeding against him for most if not all of the alleged misconduct under Bar Rule 4-222 (a).[4] Under that rule, the Bar cannot initiate a disciplinary proceeding against a lawyer unless the State Bar has received a grievance, or the Investigative Panel has instituted a grievance, within four years after the alleged conduct. The rule further provides that the four-year limitation period may be tolled for up to two years where the "offender or the offense is unknown, the offender's whereabouts are unknown, or the offender's name is removed from the roll of those authorized to practice law in this State." Id. Here, the Investigative Panel of the Bar initiated a grievance[5] on April 10, 1992.[6] Most of the misconduct alleged occurred generally between 1986 and 1988. The Bar contends it is entitled to rely on the two-year tolling provision because it did not learn of Allison's conduct until March 1992. Accordingly, the Bar asserts it may proceed against Allison regarding his conduct from April 10, 1986, forward. On the other hand, Allison contends that the tolling provision in the Bar Rule refers to lack of knowledge on the part of the actual or potential victim or victims in the matters alleged. Otherwise, Allison argues, the Bar would always be permitted to use the two-year tolling provision, since it could always claim the Bar was unaware of the alleged misconduct and initiate a grievance through its Investigative Panel. Therefore, Allison asserts that since the alleged victims or potential victims did not proceed by filing grievances against him for any misconduct, the Bar may only proceed against him for conduct from April 10, 1988, forward.

---

[4] See footnote 1, supra.

[5] The Investigative Panel instituted the grievance under Bar Rule 4-203 (a) (2) which gives the Panel authority to initiate a grievance on its own motion.

[6] The alleged misconduct came to the Bar's attention in March 1992, when the United States Bankruptcy Trustee for the Northern District of Georgia informed staff members of the General Counsel of the Bar's office of apparent improprieties on Allison's part which came to light in the course of Allison's bankruptcy proceeding.

Neither Allison nor the State Bar refers us to any direct authority, and we have found none on this issue, i.e., may the State Bar rely on the tolling provision under Bar Rule 4-222 (a) by asserting that it did not have knowledge of alleged misconduct during the limitation period, when victims or potential victims of the misconduct had knowledge of the misconduct and could have filed grievances during the four-year period. Allison contends the knowledge of the victims or potential victims is, in a sense, "imputed" to the Bar. The Bar correctly points out that imputation of knowledge is a factor in criminal law and that disciplinary proceedings are not criminal in nature.[7]

We determine the question presented by following the general rules of statutory construction, see *In the Matter of Dowdy*, 247 Ga. 488, 492 (2) (277 SE2d 36) (1981), the most important of which is to discern the statutory intent of the rule. See, e.g., *Johnson v. State*, 267 Ga. 77, 78 (475 SE2d 595) (1996); *Echols v. Thomas*, 265 Ga. 474, 475 (458 SE2d 100) (1995). In so doing we must consider the primary purpose of disciplinary proceedings, which is to protect the public from attorneys who are not qualified to practice law due to incompetence or unprofessional conduct. *In the Matter of Williams*, 266 Ga. 132 (464 SE2d 816) (1996); *In the Matter of Yarbrough*, 264 Ga. 720, 721 (450 SE2d 414) (1994). With that purpose in mind we have no difficulty determining that where a victim or potential victim does not come forward within the four-year statute of limitation under the Bar Rules by filing a grievance[8] against an attorney for misconduct under the professional standards, the State Bar may take advantage of the two-year tolling period of Bar Rule 4-222 (a).

The rationale behind this holding is clear. The State Bar is charged with the responsibility to maintain and enforce standards of ethical conduct on the part of its member attorneys. Bar Rule 4-101. There are many instances where victims or potential victims might not file a grievance with the State Bar against an attorney, e.g., where the attorney is a close personal friend or has another close relationship with the client;[9] where the client might fear retribution against a friend, family member, or another, if the client files a grievance; and where the client does not consider the lawyer's conduct to be improper in any way. It would be anomalous to charge the Bar with enforcing the ethical standards, but preclude the Bar from

---

[7] See Bar Rule 4-221 (e) (2) which provides that, after a finding of probable cause, "the procedures and rules of evidence applicable in civil cases under the laws of Georgia shall apply."

[8] See Bar Rule 4-202 regarding grievances other than those initiated by this Court or the Bar through its Investigative Panel.

[9] See, e.g., *In the Matter of Henley*, 267 Ga. 366 (478 SE2d 134) (1996) (attorney engaged in misconduct but client, a friend, did not file grievance or have a complaint against the lawyer).

using the two-year tolling provision where it has no knowledge, or means to obtain knowledge, of misconduct so that it could proceed within the four-year period to carry out its directive.

Accordingly, we agree with the Bar, the special master, and the review panel, that the Bar may proceed against Allison in this action for all alleged misconduct from April 10, 1986, forward.

3. *Violations of Professional Standards*

(a) *Standards 4 and 45*

We next look to the Bar's allegations, and the conclusions of the special master and review panel, that Allison violated Standards 4 and 45 of Bar Rule 4-102 (d) by assisting Simmons in signing various fictitious names to documents and by signing fictitious names on behalf of Simmons to documents. Standard 4 prohibits a lawyer from engaging in professional conduct involving dishonesty, fraud, deceit or wilful misrepresentation. Standard 45 prohibits a lawyer from counseling a client or assisting a client in conduct the lawyer knows to be illegal or fraudulent.

There is no question that Allison violated both Standards 4 and 45. We find no merit to Allison's contention that there was nothing improper or unlawful in his actions on behalf of his client's use of false names.[10] Standard 4 precludes dishonest professional conduct on the part of a lawyer, and it is undisputed that Allison signed false names to documents on Simmons' behalf or assisted Simmons in signing false names. In using these names in forms submitted to the Secretary of State for incorporation of entities and in the deed to secure debt and in loan documents, Allison was, at the very least, dishonest and thereby violated Standard 4. Further, Allison's conduct violated Standard 45. We find Allison's assertion that Simmons had a common law right to use names which were not his, i.e., "aliases" or "fictitious names," completely spurious. There is simply no right, common law or otherwise, to use false names in documents having legal effect.[11] Indeed, it is a criminal act to make a false statement in

---

[10] We also disagree with the special master and review panel that no question of material fact remains that Allison assisted his client Simmons in the use of false names in order to avoid detection by Simmons' victims and creditors. Although it is logical from the facts to conclude that Simmons' purpose was to conceal his assets from victims and creditors, this is not an undisputed fact. Rather, Allison admitted that a group of Simmons' creditors had formed an association known as the Calvin Simmons Evangelical Association and had obtained a judgment against Simmons in Gwinnett Superior Court. Allison also admitted that Simmons' intent in using false names was to conceal his assets from his "nosy" parishioners. Although it certainly appears from these facts that Simmons was attempting to conceal assets from victims and creditors, the special master and review panel were not authorized to so conclude on summary judgment.

[11] Of course a person may use a name which is not his own for business purposes if the person properly registers the name, so that another party could determine the true ownership of the party or parties involved. See OCGA § 10-1-490.

*any* document related to any state or local department or agency. OCGA § 16-10-20. That statute provides:

> A person who knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact; makes a false, fictitious, or fraudulent statement or representation; or makes or uses any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of state government or of the government of any county, city, or other political subdivision of this state shall, upon conviction thereof, be punished by a fine . . . or by imprisonment for not less than one nor more than five years, or both.

The record establishes that Allison committed other crimes and assisted Simmons in so doing. See OCGA § 14-2-129, which provides that it is a misdemeanor for a person to submit a document to the Secretary of State where the person knows the document is false in any material respect. It is axiomatic that a document containing a false name of a corporate officer is false in a material respect. See also OCGA § 7-1-912 (d) (2) and (e) (1), which provide that it is unlawful for a person to furnish a false name to a financial institution, as Allison admittedly did or assisted Simmons in so doing during the course of seeking a loan and in effecting various transfers of money. Thus, Allison violated Standard 45 not only by knowingly making a false statement or fact, and assisting his client in so doing, see id. at (b), but also in engaging in illegal conduct and assisting his client in so doing. See id. at (d).

(b) *Standards 35, 36, and 37*

We agree with the special master and review panel that Allison violated Standards 35, 36 and 37 pertaining to a lawyer's accepting or continuing employment where the lawyer's exercise of independent judgment on behalf of the client may be affected by his representation of another client, except where the clients consent after the lawyer's full disclosure.[12] Although Allison contends it is not appar-

---

[12] These Standards provide as follows:

Standard 35: A lawyer shall decline proffered employment if the exercise of his independent professional judgment on behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under Standard 37. A violation of this standard may be punished by disbarment.

Standard 36: A lawyer shall not continue multiple employment if the exercise of his independent professional judgment on behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent

ent that his independent judgment would have been affected where he simultaneously represented Simmons and the Burts in connection with the Burt trusts, the conflicts were such in this circumstance that Allison was required to obtain the consent of the Burts after fully disclosing the potential conflicts.[13]

4. *The Appropriate Discipline*

We agree with the special master that disbarment is the appropriate sanction in this case. First, as noted by the special master, each of the violations warrants disbarment in and of itself. See ABA Standards for Imposing Lawyer Sanctions (1991), Standard 4.31; Standard 5.11. Moreover, the record supports the finding by the special master that there are additional aggravating factors in this case, including Allison's substantial experience in the practice of law,[14] his refusal to acknowledge the wrongful nature of his conduct, and the pattern of misconduct and multiple offenses. See ABA Standard 9.22 (c), (d), (g), and (i). The special master found and the review panel set forth no factors in mitigation.

Accordingly, it is hereby ordered that Dale Allison be disbarred from the practice of law in this State. He is reminded to protect the interests of his clients and to comply with all the requirements of Bar Rule 4-219 (c) (1) and (2).

*Disbarred. All the Justices concur.*

DECIDED FEBRUARY 17, 1997 —
RECONSIDERATION DENIED MARCH 13, 1997.

William P. Smith III, General Counsel State Bar, E. Duane Cooper, Assistant General Counsel State Bar, for State Bar of Georgia.
Burruss & Anderson, Michael J. Anderson, for Allison.

---

permitted under Standard 37. A violation of this standard may be punished by disbarment.

Standard 37: In the situations covered by Standards 35 and 36, a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each. A violation of this standard may be punished by disbarment.

[13] Allison's argument that no conflict existed in regard to the Burt trusts because the trusts were never funded is without merit. A violation of professional standards occurs where the lawyer's independent judgment may reasonably be affected; there is no requirement of actual harm.

[14] Allison was admitted to the Georgia Bar in 1979 and apparently practiced in Illinois before that time.