A00A0630. HUMPHREY v. THE STATE.
(537 SE2d 95)

POPE, Presiding Judge.

Daniel Humphrey appeals his convictions for driving under the influence, attempting to elude an officer, and driving on the wrong side of the road. He asserts the trial court made four errors.

1. Humphrey contends the court erred in granting the State's motion for mistrial when the case was first tried and that, therefore, he should not have been tried a second time. After the jury had been

impaneled, the State moved for a mistrial on the grounds that it could not get a fair trial because two necessary witnesses who were under subpoena did not appear at trial. Humphrey objected to the motion, and he filed a plea in bar before the second trial arguing that the second trial violated the constitutional prohibition against double jeopardy on the grounds that there was no manifest necessity for the mistrial. See *Illinois v. Somerville*, 410 U. S. 458 (93 SC 1066, 35 LE2d 425) (1973); *Abdi v. State*, 249 Ga. 827, 828 (2) (294 SE2d 506) (1982); *Terrell v. State*, 236 Ga. App. 163, 165 (511 SE2d 555) (1999); *Banks v. State*, 230 Ga. App. 258 (1) (495 SE2d 877) (1998).

The trial court's decision to grant a mistrial and reject lesser alternatives is entitled to great deference. *Terrell v. State*, 236 Ga. App. at 165; *Cooke v. State*, 230 Ga. App. 326, 328-329 (496 SE2d 337) (1998). But, because of the "opportunity for overreaching, . . . [i]f the prosecutor proceeded to trial aware that a key witness was not available to testify and a mistrial was granted for that reason, a second prosecution is barred." *Spencer v. State*, 192 Ga. App. 822, 823-824 (1) (386 SE2d 705) (1989). In *Davis v. State*, 170 Ga. App. 748 (318 SE2d 202) (1984), we held that there was a manifest necessity for a mistrial where the victim ran away from an unsecured juvenile shelter the night before she was to testify and after the jury had been impaneled. See also *Spencer*, 192 Ga. App. at 824 (subpoenaed witness appeared at morning session but not at afternoon session).

Here, there was no evidence that the prosecutor knew prior to trial that the two necessary witnesses would refuse to obey the subpoena. Both witnesses were under subpoena, both had appeared in court two days earlier, and both were still under subpoena on the morning of the trial. When the two witnesses failed to appear, a deputy sheriff was sent to find them. He eventually found one at about 10:30 a.m. but could not locate the second. The court declared a mistrial. The second witness was not found until several days later. Both witnesses were subsequently ordered to show cause why they should not be held in contempt. One of the two was sanctioned. Both witnesses were necessary to identify Humphrey as the defendant and to rebut Humphrey's defense that he was not driving the truck that was involved in the incident. We find no abuse of discretion.

2. Humphrey argues that the court should have disqualified the prosecutor, Ben Kirbo, who worked part-time as the State Court Solicitor-General in Decatur County. Kirbo also maintains a general civil practice.

In June 1998, during a preliminary hearing in this case, Ben Kirbo announced to the court that he was disqualified "because of a civil conflict; other members of my firm represent Mr. Humphrey in some other matters." The case was continued so as to allow Kirbo a reasonable opportunity to arrange special, i.e., alternative, prosecution.

In February 1999, when the case was again called for trial and Ben Kirbo was still assigned as the prosecutor, Humphrey objected. He explained that Bruce Kirbo, one of Ben's law partners, represented him in divorce proceedings that had ended in September 1998 and in real estate transactions in December of the same year. Humphrey argued that not only had Ben Kirbo already disqualified himself, but he should be disqualified because he could have learned something about Humphrey from the client file or from Bruce. Further, the divorce and the criminal case both involved Humphrey's alleged drinking habits. Humphrey, however, had no direct evidence of any communication between the two partners.

Ben Kirbo denied any knowledge of the divorce except being aware that Bruce represented Humphrey. And he denied discussing the criminal matter with his partners or other members of the firm. The court held that Kirbo was not disqualified primarily because Humphrey had no evidence that the two Kirbos ever discussed either matter.

This case raises concerns about both multiple representation as regulated by Canon 5 and Directory Rule 5-105 of the Canons of Ethics of the State Bar of Georgia and successive representation as regulated by Canon 4. Each has a different focus and a different standard for disqualification. The primary focus of the rules against multiple representation is to ensure that a lawyer exercises independent professional judgment on behalf of his clients. See Canon 5. The primary focus of rules against successive representation is the preservation of client confidences and secrets. See Canon 4.

A lawyer is required to decline multiple representation, i.e., representation of a second client where the representation may affect his or her representation of an existing client, unless it is "obvious that he can adequately represent the interest of each." Directory Rule 5-105 (C). And, even then, where there is any possible effect on the other, he must secure from each client their consent after "full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." Directory Rule 5-105 (C). A lawyer breaches this duty by taking a second client if his independent judgment may reasonably be affected; "there is no requirement of actual harm." *In re Allison*, 267 Ga. 638, 645, n. 13 (481 SE2d 211) (1997). Finally, "[i]f a lawyer is required to decline employment or to withdraw from employment under DR 5-105, no partner or associate of his or her firm may accept or continue such employment." Directory Rule 5-105 (D).

A lawyer is required to decline successive representation, i.e., representing a party in a matter adverse to a former client, where the second matter is "substantially related" to the lawyer's representation of the former client. *Crawford W. Long Mem. Hosp. &c. v.*

*Yerby,* 258 Ga. 720, 721 (1) (373 SE2d 749) (1988). This rule is based on an irrebuttable presumption that confidences have been disclosed. "If such a substantial relationship between the cases is shown, the court will then irrebuttably presume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation." (Citations omitted.) *Summerlin v. Johnson,* 176 Ga. App. 336, 338 (1) (335 SE2d 879) (1985). See also *Carragher v. Harman,* 220 Ga. App. 690, 691-692 (1) (469 SE2d 443) (1996). The party seeking disqualification is not required to point to specific confidences revealed to his attorney that are relevant to the pending case; rather, his burden is only to show a substantial relationship between the two cases. *Summerlin,* 176 Ga. App. at 338 (1).

In this case, Kirbo was faced with both types of representation problems. The criminal case was pending at the same time as the divorce case, i.e., multiple representation, and Humphrey pointed that out to the court. Indeed, Kirbo knew he had a multiple representation problem while the divorce case was pending; he told the court so when the case first came up for trial. There can be little doubt that it is improper for one attorney in a firm to prosecute his partner's client when both matters are pending. At a minimum, Humphrey would have had to give his fully informed consent before Kirbo could have prosecuted him under those circumstances. Directory Rule 5-105. The State does not contend that this happened. Thus, at the time of the February 1999 hearing, Kirbo rightly recognized that he was disqualified from prosecuting Humphrey.

After Humphrey's civil matters were resolved, Kirbo was still faced with the possibility of a successive representation problem, which required determining whether the criminal action and his firm's prior representation of Humphrey were substantially related. Humphrey argues that because his divorce involved allegations that he drank too much at or about the same time that he was arrested for DUI, the criminal prosecution was substantially related to the divorce.

We find that the two matters are substantially related. We are guided by the reasoning of *Summerlin* where the Court discussed several hypotheticals that served "to prove the wisdom of not allowing a party's previous attorney to represent another against that party" where the two matters are substantially related. *Summerlin,* 176 Ga. App. at 340-341 (1). Both matters involved Humphrey's drinking at or about the same time. If Ben Kirbo learned the simple fact that Humphrey's wife claimed that he drank excessively, it could have influenced his decision to prosecute Humphrey on the DUI charge. Knowledge of Humphrey's actual drinking habits or his credibility with regard to them could further affect Kirbo's

prosecutorial decisions and his tactics trying the case. Also, Humphrey's own behavior could be affected. As stated in *Summerlin*,

> if a person knows he might face his lawyer in another lawsuit where something he has said or done, however insignificant it seemed at the time, could be used against him, can we expect him to repose the full confidence in his lawyer as the law anticipates he should?

*Id.* at 340 (1).[1]

The lower court was concerned that a finding of disqualification would mean that a defendant in Humphrey's position could simply retain Kirbo's firm and thereby disqualify Kirbo from prosecuting any criminal matter against him including a pending matter. But law firms are expected to screen prospective clients for possible conflicts and decline representation where one exists. A statement in the State's brief reveals the root of the problem in this case, "At the time [Humphrey employed the firm for the divorce], [Bruce Kirbo] did not know of the pending charges, and the Solicitor did not know of the divorce matter." The firm was in the best position to avoid this problem. Further, nothing in our opinion prevents Kirbo from prosecuting Humphrey in the future in matters unrelated to his firm's representation of Humphrey.

Contrary to the State's contentions, imputed or vicarious disqualification of a government employee is not at issue here. See *Frazier v. State*, 257 Ga. 690, 694 (9) (362 SE2d 351) (1987); *Billings v. State*, 212 Ga. App. 125, 128-129 (4) (441 SE2d 262) (1994). In this case, the imputed disqualification, from Bruce Kirbo to Ben Kirbo, is within a private firm. See Directory Rule 5-105 (D). Compare Standard of Conduct 38.

The court erred in refusing to disqualify Ben Kirbo from prosecuting Humphrey in this case.

3. Humphrey contends that the court improperly limited cross-examination of the two witnesses who failed to appear at the earlier trial. He urges that cross-examination about their absence from court and the court's actions requiring them to show cause were relevant to their motives in testifying against him. We agree. Although the scope of cross-examination is within the discretion of the court, cutting off all inquiry on a proper topic of cross-examination was an

---

[1] Furthermore this case raises the issue of whether an attorney with a multiple representation problem can solve that problem by simply waiting for one of the cases to resolve itself. This situation presents a slightly different problem from a case of mere successive representation. But, we need not address this issue here because of our holding that Kirbo's prosecution of this case violated the rules of both multiple and successive representation.

abuse of discretion. See *Byrd v. State*, 262 Ga. 426, 427-428 (2) (420 SE2d 748) (1992). On retrial, cross-examination should be allowed.

4. Finally, Humphrey urges that the jury charge on presumption of innocence, the burden of proof and reasonable doubt was insufficient. Having reviewed the charge as a whole we find no merit to this enumeration.

*Judgment reversed. Smith, P. J., and Miller, J., concur.*

DECIDED JULY 6, 2000.

*Gilbert J. Murrah*, for appellant.
*Ben Kirbo, Solicitor*, for appellee.