A05A0554. DUVALL et al. v. BLEDSOE.
(617 SE2d 601)

RUFFIN, Chief Judge.

Edwin Duvall brought a medical malpractice/wrongful death suit against multiple defendants, including Dr. Tom Bledsoe.[1] Bledsoe moved to disqualify Duvall's counsel, Coppedge & Leman, P.C., on the basis that attorney Jesse Vaughn, while associated with another firm, represented Bledsoe in connection with divorce and other proceedings. The trial court granted the motion, and Duvall filed an application for interlocutory appeal. We granted the application to address whether the trial court abused its discretion in disqualifying Duvall's current law firm. For reasons that follow, we reverse.

---

[1] Duvall brought suit in his individual capacity, as administrator of his wife's estate, and as guardian of their two children. In addition to Bledsoe, he sued Dr. Warren Thomas, Dr. Eric Taylor, Calhoun Urgent Care Center, Calhoun Family Practice, and Calhoun Internal Medicine. For the sake of clarity, we refer simply to the parties as Duvall and Bledsoe, respectively.

The undisputed facts demonstrate that, after graduating from law school, Vaughn became an associate of Ledbetter, Little & Smith, a law firm in Calhoun. Shortly thereafter, Bledsoe became a client of the firm, and Vaughn handled aspects of Bledsoe's divorce. Following the issuance of the divorce decree, Vaughn assisted Bledsoe in preparing a trust agreement for his children. In connection with his work, Vaughn became knowledgeable about Dr. Bledsoe's financial affairs. He also became friends with Bledsoe, and the two socialized outside of the office.

While Vaughn was employed with Ledbetter, Little & Smith, James Ledbetter served as corporate counsel for Calhoun Internal Medicine. Vaughn, however, did not recall doing any corporate work on behalf of the medical practice.

Vaughn subsequently changed law firms, and he became associated with Coppedge & Leman. Duvall retained Coppedge & Leman to represent him in a medical malpractice/wrongful death action, and suit was filed in early 2004. Initially, Vaughn was unaware that Bledsoe was a defendant in the action, and he called a witness about the case. When Vaughn discovered Bledsoe's status as a defendant, he ended his involvement in the case. Although Vaughn did not believe he had a legal conflict, he claimed that his personal relationship with Bledsoe precluded his continued participation.

Upon learning of Vaughn's association with the firm, Bledsoe moved to disqualify Coppedge & Leman. The trial court granted the motion. In its order, the trial court cited a federal case for the proposition that

[t]here is a two-prong test for disqualification of counsel: first, the party seeking disqualification must prove that it once enjoyed an attorney-client relationship with the opposing lawyer; and second, the movant must show that the matters embraced within the pending suit are substantially related to the matters or cause of action wherein the attorney previously represented it. [Cit.] This test recognizes that many times there exists no genuine threat that any confidences of the former client would be disclosed to its adversary. [Cit.] However, the Court finds, after reviewing the affidavits and depositions in this case that there is a "threat" that Defendant Bledsoe's confidential information will be disclosed to the adversary. Mr. Vaughn gained a great deal of personal knowledge, including financial information, about Defendant Bledsoe as a result of representing him in the above-mentioned divorce action and Mr. Vaughn acknowledged in his deposition that he has discussed the [medical malpractice/wrongful death] case with Warren Coppedge.

Therefore, Attorney Jesse Vaughn and the firm of Coppedge & Leman must be disqualified.

Duvall appeals, asserting in two related enumerations of error that the trial court erroneously granted the motion. According to Duvall, the lack of a substantial relationship between the prior actions in which Vaughn represented Bledsoe precludes the trial court from disqualifying Vaughn's current firm. We agree.

"The ultimate determination of whether an attorney should be disqualified from representing a client in a judicial proceeding rests in the sound discretion of the trial judge."[2] This Court will not interfere with a trial court's ruling absent abuse of that discretion.[3] "However, the rules of disqualification of an attorney will not be mechanically applied; rather, [this Court] should look to the facts peculiar to each case in balancing the need to ensure ethical conduct on the part of lawyers appearing before the court and other social interests, which include the litigant's right to freely chosen counsel."[4] As our Supreme Court recently reiterated, "[t]he right to counsel is an important interest which requires that any curtailment of the client's right to counsel of choice be approached with great caution."[5]

Initially, we note that in disqualifying the firm, the trial court relied upon federal case law, which may be persuasive, but is not binding authority.[6] However, the law in Georgia is similar. It provides that "[a] lawyer is required to decline successive representation, i.e., representing a party in a matter adverse to a former client, where the second matter is 'substantially related' to the lawyer's representation of the former client."[7] The party seeking disqualification bears the burden of establishing the existence of such a substantial relationship.[8]

Few cases explore what is meant by the phrase "substantially related." The issue generally has been addressed on a case-by-case basis.[9] However, guidance as to the meaning of "substantial relation"

---

[2] (Punctuation omitted.) *Kent v. Peters*, 211 Ga. App. 698, 699 (2) (440 SE2d 87) (1994).

[3] See id.

[4] (Punctuation omitted.) *Clos v. Pugia*, 204 Ga. App. 843, 844 (1) (420 SE2d 774) (1992).

[5] (Punctuation omitted.) *Bernocchi v. Forcucci*, 279 Ga. 460, 462 (2) (614 SE2d 775) (2005).

[6] See *Nguyen v. Lumbermens Mut. Cas. Co.*, 261 Ga. App. 553, 555, n. 7 (583 SE2d 220) (2003).

[7] *Humphrey v. State*, 244 Ga. App. 808, 810-811 (2) (537 SE2d 95) (2000); see also Rule 1.9 of the Georgia Rules of Professional Conduct.

[8] See id.; *Dismuke v. C & S Trust Co.*, 261 Ga. 525, 527 (3) (407 SE2d 739) (1991); *Summerlin v. Johnson*, 176 Ga. App. 336, 338 (335 SE2d 879) (1985) (superseded by statute as stated in *Crawford &c. Mem. Hosp. of Emory Univ. v. Yerby*, 258 Ga. 720, 721, n. 1 (373 SE2d 749) (1988)).

[9] See, e.g., *Crawford &c. Mem. Hosp.*, supra at 721-722 (3) (former defense attorney for

can be found by looking to the plain meaning of the words. In the Preamble to Georgia's Rules of Professional Conduct, "substantial" is defined, in part, as "denot[ing] a material matter of clear and weighty importance." And the dictionary defines "relation" as "[a] logical or natural association between two or more things; connection."[10] Taken together, the plain meaning of this phrase suggests that the former cases must have both material and logical connections with the subsequent case. Here, Bledsoe has shown only that Vaughn represented him in connection with his divorce proceeding and the creation of a trust, which stemmed from the divorce proceeding. We fail to see any such connection — substantial or otherwise — between these matters and the subsequent medical malpractice/wrongful death claim.

Apparently, Bledsoe takes issue with the fact that Vaughn obtained information about his personal finances in connection with the divorce proceedings and trust matter. However, the mere fact that an attorney has general financial information about a former client does not necessarily warrant disqualification.[11] Indeed, under Bledsoe's reading of the "substantially related" test, Vaughn's firm would be precluded from undertaking representation of any case in which Bledsoe was involved so long as damages were sought. This is too broad a reading of the test and one that unduly curtails an opposing party's right to freely chosen counsel.[12]

Moreover, the Georgia Rules of Professional Conduct preclude Vaughn from using such financial information against Bledsoe in future actions. Specifically, Rule 1.9 (c) (1)-(2) provides, in relevant part, that

[a] lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter . . . use information

---

hospital precluded from representing plaintiff in subsequent malpractice claim); *Humphrey*, supra at 809-812 (2) (lawyer barred from prosecuting law partner's former divorce client in subsequent DUI case as both cases implicated alleged drinking habits); *Nat. Media Svcs. v. Thorp*, 207 Ga. App. 70, 70-71 (1) (427 SE2d 61) (1993) (former debt collection action not substantially related to subsequent breach of employment contract case); *Knoxville Med. Investors v. Nat. Healthcorp*, 192 Ga. App. 460, 460-461 (2) (385 SE2d 110) (1989) (matter of securing certificate of need for nursing home not substantially related to subsequent action involving failure to comply with option contracts on nursing home); *Summerlin*, supra at 337-341 (1) (law firm disqualified from representing plaintiff in personal injury case where lawyer from firm formerly represented defendant in DUI case as DUI evidence relevant in subsequent action).

[10] The American Heritage Dictionary (2nd college ed.), p. 1043.

[11] See *Knoxville Med.*, supra.

[12] See *Bernocchi*, supra ("[b]ecause of the right involved and the hardships brought about, disqualification of chosen counsel should be seen as an extraordinary remedy and should be granted sparingly").

relating to the representation to the disadvantage of the former client . . . or . . . reveal information relating to the representation.

The comment to this Rule clarifies that, *"[i]ndependent of the question of disqualification* of a firm, a lawyer changing professional association has a continuing duty to preserve confidentiality of information about a client formerly represented."[13] Failure to adhere to this rule could lead to Vaughn's disbarment.[14] Given this distinct and harsh penalty, we will not presume that Vaughn will disclose confidential financial information either to the detriment of his former client or to himself.

Bledsoe also contends that Coppedge & Leman should be disqualified because Vaughn's former firm represented Calhoun Internal Medicine. According to Bledsoe, Vaughn "necessarily has knowledge or has had access to knowledge from [such] prior representation[ ] of Calhoun Internal Medicine's practices, policies, procedures, reporting requirements, and of ongoing and recurring problems facing Calhoun Internal Medicine."

Again, however, Vaughn was unable to recall working on any corporate matters for Calhoun Internal Medicine. He thus determined that his former representation created no legal conflict to his law firm accepting the subsequent medical malpractice/wrongful death claim. Under these circumstances, Bledsoe bears the burden of establishing that Vaughn's firm should be disqualified. To do so, he must "show that the matters embraced within the pending suit are substantially related to the matters or cause of action wherein [Vaughn] previously represented the party."[15] Here, Bledsoe does not set forth any specific matter or action in which Vaughn might have been involved with regard to Calhoun Internal Medicine. And Bledsoe's bare assertion that Vaughn was involved is insufficient to sustain his burden.[16] Under these circumstances, Bledsoe failed to establish that the prior divorce action is substantially related to the current litigation, and the trial court abused its discretion in concluding otherwise.

*Judgment reversed. Johnson, P. J., and Barnes, J., concur.*

---

[13] (Emphasis supplied.) Comment 9 to Rule 1.9 of the Georgia Rules of Professional Conduct.

[14] See Rule 1.9 (c) of the Georgia Rules of Professional Conduct.

[15] *Dismuke,* supra at 527 (3).

[16] See id.

DECIDED JULY 8, 2005 — 

*Coppedge & Leman, Warren N. Coppedge, Jr., Joseph B. Evans,* for appellants.

*Minor, Bell & Neal, William F. Jourdain, Jonathan Bledsoe,* for appellee.