A09A0929. OGLETREE v. THE STATE.
(685 SE2d 351)

SMITH, Presiding Judge.

Stacey Ogletree appeals from the trial court's order denying his motion to dismiss based upon an alleged violation of the prohibition

---

against double jeopardy. In his sole enumeration of error, Ogletree contends that double jeopardy barred his subsequent prosecution because the trial court's grant of a mistrial in the first proceeding was not manifestly necessary and therefore erroneous. We disagree and affirm.

> The Georgia Constitution provides that "no person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of mistrial." Once a jury is impaneled and sworn, jeopardy attaches and an accused is entitled to have the trial proceed to an acquittal or conviction by that jury. The trial court may interrupt the proceedings and declare a mistrial over the defendant's objection only if the prosecutor demonstrates manifest necessity for the mistrial. Manifest necessity exists when the accused's right to have the trial completed by a particular tribunal is subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury. The classic example of a proper basis for a mistrial is the trial judge's belief that the jury is unable to reach a verdict; at the other extreme are the cases where the prosecutor seeks a mistrial to buttress weaknesses in the state's evidence. When there is no prosecutorial misconduct, the trial court has broad discretion in deciding whether to grant a mistrial.

(Citations, punctuation and footnotes omitted.) *Laster v. State*, 268 Ga. 172, 173 (1) (486 SE2d 153) (1997).

> [A] trial court's judgment about whether there was manifest necessity to grant a mistrial is entitled to great deference. . . . A trial judge has acted within his sound discretion in rejecting possible alternatives and in granting a mistrial, if reasonable judges could differ about the proper disposition, even though in a strict, literal sense, the mistrial is not "necessary." This great deference means that the availability of another alternative does not without more render a mistrial order an abuse of sound discretion.

(Citations and punctuation omitted.) *Tubbs v. State*, 276 Ga. 751, 754 (3) (583 SE2d 853) (2003).

The record in this case shows that the State charged Ogletree with several counts of rape and child molestation. Jury selection began on Wednesday, March 12, 2008. The jury was impaneled on

Friday, March 14, 2008.

On Monday, March 17, 2008, the parties asked for guidance from the trial judge about "matters they were discussing on Friday" because they needed a ruling before opening statements. These matters related to the State's "proffer on child hearsay statements," as well as expert witness issues. The trial judge initially ruled that the State could play a redacted videotape of a forensic interview of the children. The trial judge then addressed whether the State could call a physician (Melba Johnson, M.D.) and an investigator with the district attorney's office (Anique Whitmore) as expert witnesses. The trial judge reserved ruling on the doctor's testimony, but explained that it "was inclined to let [her] testify."

When the trial judge informed the State that it was "not inclined to let Ms. Whitmore testify," the State explained that her testimony was essential because the two experts who conducted the forensic interviews of the three children at the Georgia Center for Children were unavailable.[1] Although Ms. Whitmore worked as an investigator with the district attorney's office, she formerly worked for the Georgia Center for Children as a forensic examiner. The State also explained that admission of the videotape of a forensic interview of one of the children was essential to its case because this child no longer independently recalled the events. The State informed the trial court that it "anticipated getting out the video through the detective who was present for those interviews. The . . . State has provided case law to this Court that shows that this should be allowable."

The trial court responded, "The foundational aspect is okay of the detective introducing the tape. That's not the problem. The problem that you face is how does . . . the defense cross-examine the interviewer?" The State then asserted that it should be entitled to introduce the child's statements in the videotape under the child hearsay statute if the child was available to testify. The trial court rejected this argument based on its conclusion that the interviewer had to testify in order for the videotape to be admissible.

Following an unreported conference with counsel in the trial court's chambers, the court stated on the record that one of the interviewers "apparently from yesterday evening had an early

---

[1] The State informed the trial court that it had learned on Friday, March 14, 2008, that a forensic examiner with the Georgia Center for Children (Monica Gibbs) who had interviewed the children on videotape had been placed on bed rest during her pregnancy. The State informed the trial court that the forensic examiner's doctor was "going to let [her] know this morning [Monday], but the doctor is either going to be inducing labor or she will probably be on bed rest." The other expert (Vicki Wilkerson) was unavailable because her father was gravely ill.

pregnancy issue, was admitted and is — labor is to be induced, but she would otherwise be available." It then advised the State that it would ordinarily grant a continuance "in this particular circumstance." The State moved for a continuance based upon the trial court's ruling that it could not introduce the videotape without presenting testimony from the unavailable interviewer.

The trial court concluded that "manifest necessity does, in fact, exist on behalf of the State as well as the defense in this case and that this manifest necessity and potential mistrial of this case would not be attributed to anything but — to either party." It also noted

> that this problem did not come up until this morning until probably about 10:00 o'clock that we found out the circumstance involving [the interviewer], when the Court had to make some evidentiary rulings or issues in regards to the admissibility of the tape as it related to the child hearsay statute.

Defense counsel agreed that she had

> not seen anything that would indicate bad faith on behalf of the Prosecutor. The witnesses that are unavailable appear to be unavailable for valid reasons. Our only position would be that the case could go forward without those witnesses. It wouldn't be the case that the State would want to put up, I would agree with that, but the State could go forward with the witnesses who are left.

The trial court then ruled that it would "grant the motion for continuance. What I'll do at this point in time, ladies and gentlemen, is I'm going to go ahead and, given the fact that I don't know how long [the interviewer] would be otherwise unavailable, I'm going to declare a mistrial. . . ."

When the State subsequently reindicted Ogletree for two counts of rape, four counts of child molestation, and six counts of aggravated child molestation, he filed a plea in bar and motion to dismiss. The trial judge rejected Ogletree's claim that the previous mistrial was not manifestly necessary because the State could have proceeded to trial without the testimony of the forensic examiners. In his order, the trial judge noted that the record demonstrated that no alternative suggested by him "was suitable or agreed to by both parties," and that he "made a finding of fact that the prosecution did not deliberately cause the mistrial or in any way act in bad faith."

After reviewing the record in this case, we conclude that the trial court did not abuse its discretion by concluding that a mistrial was

manifestly necessary. The trial court and defense counsel, both of whom were privy to what transpired in an unreported conference in chambers, agreed that the State did not act in bad faith. Additionally, the trial court found, after this unreported conference, that the witness problem did not come up until Monday morning when it granted the mistrial.[2] And it was the trial court's ruling that the State could not introduce the videotaped statement of the victim that created the manifest necessity for a mistrial, not the absence of the interviewer standing alone. A reasonable judge could certainly have concluded that the videotape was necessary to afford "the prosecutor one full and fair opportunity to present his evidence to an impartial jury." (Citation and punctuation omitted.) *Laster*, supra at 173. See also *Spearman v. State*, 278 Ga. 327, 328-329 (1) (602 SE2d 568) (2004).

We recognize that "the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence." (Citation, punctuation and footnote omitted.) *Spearman*, 278 Ga. at 329. In this case, however, the trial court found after an unreported conference in chambers that the witness did not become unavailable until after the jury had already been sworn. Because we do not know what information was obtained by the trial court during that conference, we cannot conclude that the trial court's finding is not supported by the record.

The trial court did not err by denying Ogletree's plea in bar.

*Judgment affirmed. Phipps, J., concurs. Bernes, J., concurs specially.*

BERNES, Judge, concurring specially.

While I concur fully in the majority opinion and judgment, I write separately to emphasize the legal framework applicable in double jeopardy cases where the prior case ended in a mistrial due to the unavailability of a critical state witness.

It is true that under certain circumstances, the unavailability of a critical state witness can create a manifest necessity which will allow a mistrial without prohibiting retrial under the Double Jeopardy Clause. See *Wade v. Hunter*, 336 U. S. 684 (69 SC 834, 93 LE 974) (1949); *Spearman v. State*, 278 Ga. 327, 329 (1) (602 SE2d 568) (2004); *Humphrey v. State*, 244 Ga. App. 808, 808-809 (1) (537 SE2d 95) (2000); *Spencer v. State*, 192 Ga. App. 822, 823-824 (1) (386 SE2d 705) (1989); *Davis v. State*, 170 Ga. App. 748 (318 SE2d 202) (1984). But "the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence." (Cita-

---

[2] The jury was sworn the previous Friday.

tion and punctuation omitted.) *Spearman*, 278 Ga. at 329 (1). See *Arizona v. Washington*, 434 U. S. 497, 508 (II) (98 SC 824, 54 LE2d 717) (1978); *Spencer*, 192 Ga. App. at 823-824 (1). Furthermore, where, as here, the defendant objects to the grant of the mistrial, "[t]he state bears the heavy burden of showing . . . manifest necessity." (Citation and punctuation omitted.) *Johnson v. State*, 256 Ga. App. 730, 731 (569 SE2d 625) (2002). See also *Arizona*, 434 U. S. at 505 (II).

Where a mistrial is granted due to witness unavailability, the central question for determining whether there was manifest necessity is not whether the prosecutor acted in bad faith or was guilty of deliberate wrongdoing. Compare *Beach v. State*, 260 Ga. App. 399, 400 (579 SE2d 808) (2003) (in cases where a mistrial is granted at the defendant's request, the defendant must show "that the [s]tate intended to 'goad' the defendant into moving for a mistrial in order for the [s]tate to avoid a reversal due to prosecutorial or judicial error, or otherwise to obtain a more favorable chance of a guilty verdict on retrial"). Rather, the central question is whether the prosecutor was aware that the critical witness was unavailable before the jury was impaneled and sworn. See *Arizona*, 434 U. S. at 508 (II), n. 24; *Downum v. United States*, 372 U. S. 734 (83 SC 1033, 10 LE2d 100) (1963). If that question is answered in the affirmative, and a mistrial is later granted on the ground of witness unavailability, a second prosecution is barred. See id. This is because "[t]he prohibition against double jeopardy unquestionably forbids the prosecutor to use the first proceeding as a trial run of his case." (Citation and punctuation omitted.) *Arizona*, 434 U. S. at 508 (II), n. 24. Moreover, focusing on the timing of the prosecutor's awareness protects against a prosecutor simply gambling that he or she will not need a witness to establish a fact at trial, but then seeking a mistrial when the trial court makes an unanticipated evidentiary ruling that suddenly renders the absent witness's testimony essential to the state's case. See *Laster v. State*, 268 Ga. 172, 173 (1) (486 SE2d 153) (1997) (no manifest necessity for a mistrial where "the prosecutor seeks a mistrial to buttress weaknesses in the state's evidence").

Based on these principles, I agree with the majority that the trial court did not err in denying the defendant's plea in bar on double jeopardy grounds. As the majority opinion notes, the trial court made a factual finding that the critical state witness did not become unavailable until after the jury was impaneled and sworn. Because the prosecutor could not have become aware of the witness's unavailability until that point, the state met its burden of showing manifest necessity for the mistrial. Thus, retrial of the defendant is not prohibited under the Double Jeopardy Clause. See *Arizona*, 434 U. S. at 508 (II), n. 24; *Downum*, 372 U. S. at 737-738.

DECIDED OCTOBER 7, 2009.

*Kenya B. Herring, Ashleigh B. Merchant*, for appellant.
*Paul L. Howard, Jr., District Attorney*, for appellee.