## 45682. CRAWFORD W. LONG MEMORIAL HOSPITAL OF EMORY UNIVERSITY v. YERBY et al.
(373 SE2d 749)

MARSHALL, Chief Justice.

During a five-year period preceding July 1986, Bennett, an attorney, defended Crawford Long Hospital in eighteen malpractice complaints, for which he was compensated by the hospital's insurer. Seventeen of these cases involved personal injuries alleged to be the result of negligent medical care, and at least six involved allegations of negligence regarding improper surgical procedures and postoperative care.

In 1984, while Bennett was representing the hospital in defense

of malpractice claims, Yerby underwent back surgery at the hospital, and he died on the same day. In 1986, Bennett ceased representing the hospital, and later that year filed a complaint *against* the hospital on behalf of Yerby's widow. The complaint charged that the hospital and one of its employees "failed to exercise the requisite degree of care and skill required."

The hospital filed a motion to disqualify Bennett from representing Yerby. The motion was denied in the trial court and the denial was affirmed in the Court of Appeals. *Crawford W. Long Memorial Hosp. of Emory University v. Yerby,* 186 Ga. App. 407 (367 SE2d 245) (1988). We granted certiorari.

1. Both parties rely upon the long-standing rule that a lawyer is disqualified from representing a party against a former client in a matter that is "substantially related" to the lawyer's prior representation. *Tilley v. King,* 190 Ga. 421 (9 SE2d 670) (1940). See also *Summerlin v. Johnson,* 176 Ga. App. 336 (335 SE2d 879) (1985).[1]

2. The circumstances of this case create a separate, though related, problem. Bennett has undertaken to represent a client who charged the hospital with negligent medical care. The conduct complained of occurred during the time that Bennett was providing continuing legal representation to the hospital in defending against several claims that charged the hospital with negligent medical care.

Lawyers in similar circumstances (i.e., an ongoing relationship with the hospital in defending medical-malpractice claims) of necessity would acquire a wide range of knowledge concerning the nature of medical care provided by the hospital. That would include knowledge (imparted to the lawyer by the client) of practices, policies, procedures, reporting requirements, and of ongoing or recurring problems — all as they pertained during this very period of time.

3. Bennett had acquired similar knowledge of (and from) his client as a result of representation that was ongoing *at the time* of Yerby's death. That representation, of course, related to claims charging the hospital with negligent medical care. In this case, we need not determine whether the medical-malpractice claim that Bennett has brought *against* the hospital is "substantially related" to any of the eighteen medical-malpractice claims that he had defended *on behalf*

---

[1] The rule applied in these cases has been altered to some degree.

A lawyer shall not represent a client whose interests are adverse to the interests of a former client of the lawyer in any matter substantially related to the matter in which the lawyer represented the former client unless he has obtained written consent of the former client after full disclosure. A violation of this standard may be punished by disbarment. [Standard 69, Rules and Regulations of the State Bar of Georgia.]

Of course, a lawyer may not disclose confidences or secrets of the former client, nor use them adversely to that client.

*of* the hospital. The circumstance of representing a client against a former client in an action that is of the same general subject matter, and grows out of an event that occurred *during the time* of such representation, creates an impermissible appearance of impropriety. It is therefore prohibited by the Canons of Ethics.[2] For this reason, the motion to disqualify should have been granted.

*Judgment reversed. All the Justices concur.*

CLARKE, Presiding Justice, concurring.

I concur in the judgment, and in doing so I emphasize that the opinion limits the mandate of disqualification to those cases in which the lawyer was actively representing the party in matters involving the same general subject when the events giving rise to the case in question occurred.

I am authorized to state that Justice Smith joins in this concurrence.

DECIDED NOVEMBER 30, 1988.

*Lokey & Bowden, Gerald F. Handley, Scott Graham, Long, Weinberg, Ansley & Wheeler, J. M. Hudgins IV, Sidney F. Wheeler,* for appellant.

*Bennett, Williams & Henry, Michael T. Bennett, Chambers, Mabry, McClelland & Brooks, H. A. Stephens, Jr., Allen & Ballard, Hunter S. Allen, Jr., Webb, Carlock, Copeland, Semlar & Stair, Wade K. Copeland,* for appellees.

---

[2] "A lawyer should avoid even the appearance of professional impropriety." Code of Professional Responsibility, Canon 9.

The holding of this case is limited to representation involving the *same general subject matter*. A lawyer in circumstances similar to those of this case ordinarily would have acquired no special knowledge in malpractice cases that would work disqualification in cases of a different general subject matter, e.g., adverse representation involving contractual disputes, real-property matters, and unrelated tort claims would not contravene the rule.