**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 31, 2022**

# In the Court of Appeals of Georgia

A22A0885. FIRST KEY HOMES OF GEORGIA, LLC et al. v. ROBINSON.

MILLER, Presiding Judge.

In this interlocutory appeal, defendants First Key Homes of Georgia, LLC and Cerberus SFR Holdings II, L.P. seek review of the trial court's order denying their motion to disqualify plaintiff Kobree Robinson's counsel. On appeal, the defendants argue that the trial court erred by denying their motion to disqualify because an unwaived conflict of interest existed, and that the trial court erred by imposing a screening arrangement that is contrary to Georgia law and the Georgia Rules of Professional Conduct.[1] For the reasons that follow, we conclude that Robinson's counsel has a conflict of interest that is imputed to the entire firm, and we therefore

---

[1] Robinson did not file a brief in this appeal.

reverse the trial court's order denying the defendants' motion to disqualify Robinson's counsel.

> The ultimate determination of whether an attorney should be disqualified from representing a client in a judicial proceeding rests in the sound discretion of the trial judge. This Court will not interfere with a trial court's ruling absent abuse of that discretion. In ruling on a motion to disqualify counsel, the trial court sits as the trier of fact, resolving conflicts in the evidence and assessing witness credibility.

(Citations and punctuation omitted.) *Samnick v. Goodman*, 354 Ga. App. 805, 806 (841 SE2d 468) (2020). Additionally, "[a]s the party seeking disqualification, the appellants had the burden to demonstrate to the superior court that disqualification was warranted." (Citation and punctuation omitted.) *Ga. Trails & Rentals, Inc. v. Rogers*, 359 Ga. App. 207, 213 (1) (855 SE2d 103) (2021).

So viewed, the record shows that the defendants rent single-family residences to tenants in various states, including Georgia. In January 2019, Robinson entered into a lease agreement with the defendants for a residential property located in Decatur, Georgia. Robinson later discovered the presence of mold throughout his home after moving into the residence, and he made multiple complaints to the

defendants which were allegedly ignored. Robinson and his wife allegedly suffered various physical side effects from being exposed to the mold.

Robinson retained attorney June James from the law firm of Wakhisi-Douglas, LLC, to represent him, and James sent First Key Homes a letter on January 13, 2021, notifying the company that she was representing Robinson. First Key Homes replied to the letter on January 26, and requested that the firm withdraw its representation because James had previously worked for First Key Homes, and her representation of Robinson created a conflict of interest that required the entire firm's disqualification. Harold Johnson, another attorney for Wakhisi-Douglas, subsequently filed suit on Robinson's behalf against the defendants. The defendants answered the complaint and collectively filed a motion to disqualify Robinson's counsel from representing him, arguing that his counsel had an "obvious and incurable conflict of interest." Specifically, Thomas DeRue, Jr., First Key Homes' general counsel and corporate secretary, averred that James had previously worked as in-house counsel for First Key Homes. DeRue averred that James handled tenant complaints, "participated in considerable legal analysis," completed discovery requests and document production, and that she was privy to First Key Homes' legal strategies, operating procedures, and its confidential policies and affairs.

3

At the hearing on the motion, James acknowledged that she previously worked as senior counsel for First Key Homes and that her responsibilities included working with the compliance department to develop standard operating procedures, researching statutes to determine the company's compliance, and conducting compliance training with property managers. James testified that she was assigned to claims concerning tenants' complaints about maintenance and that she handled the claims that did not involve litigation. She also testified that if a tenant retained an attorney, she would work with opposing counsel to settle the matter, and that she also advised the company's staff on how to address a tenant's complaints. Although she did not engage in any litigation or appear in court on behalf of First Key Homes, James worked with outside counsel to gather information regarding any communications with residents that filed lawsuits against the company. She would also review the resident's legal complaint and would speak to the property manager and outside counsel to prepare for litigation. She described her role as "the middleman between the company and outside counsel." As to Robinson, James

4

testified that she did not handle his claims or perform any work in his case against the defendants.[2]

Following the hearing, the trial court denied the defendants' motion to disqualify counsel, but it ordered Robinson's counsel to "screen" James from all matters concerning the underlying litigation in accordance with Rule 1.10 of the American Bar Association Model Rules of Professional Conduct. The defendants filed an application for an interlocutory appeal, which this Court granted. This appeal followed.

In their sole enumeration of error, the defendants argue that the trial court erred in denying their motion to disqualify Wakhisi-Douglas from representing Robinson in the underlying litigation. Specifically, they argue that James had a conflict of interest, the conflict was not waived, the conflict was imputed to the entire firm, and that Georgia law does not permit the screening procedures implemented by the trial court. We agree that Robinson's counsel has a conflict of interest and that the trial court erred by denying the motion to disqualify Robinson's counsel.

---

[2] We note that the plaintiff's counsel did not argue below that the defendants waived the opportunity to move for disqualification.

> We approach motions to disqualify with caution due to the consequences that could result if the motion is granted, such as the inevitable delay of the proceedings and the unique hardship on the client including the loss of time, money, choice of counsel, and specialized knowledge of the disqualified attorney. Additionally, we are mindful of counsel using motions to disqualify as a dilatory tactic. Accordingly, we view disqualification as an extraordinary remedy that should be granted sparingly.

*Hodge v. URFA-Sexton, LP*, 295 Ga. 136, 138-139 (1) (758 SE2d 314) (2014). With these principles in mind, we turn to the defendants' claim of error.

"A lawyer must avoid even the appearance of impropriety, . . . to the end that the image of disinterested justice is not impoverished or tainted. Thus, it is that sometimes an attorney, guiltless in any actual sense, nevertheless is required to stand aside for the sake of public confidence in the probity of the administration of justice." (Punctuation omitted.) *Love v. State*, 202 Ga. App. 889, 891 (416 SE2d 99) (1992). Thus, an attorney is "disqualified from representing a client against a former client in an action that is of the same general subject matter, and grows out of an event that occurred during the time of such representation." (Citation and punctuation omitted.) *Befekadu v. Addis Intl. Money Transfer, LLC*, 332 Ga. App. 103, 107 (1) (c) (772

6

SE2d 785) (2015).[3] Disqualification in this situation "is limited to cases where the lawyer was actively representing the party when the events giving rise to the case in question occurred." (Citations and punctuation omitted.) Id. at 107 (1) (c). Additionally, "if one attorney in a firm has an actual conflict of interest, we impute that conflict to all the attorneys in the firm, subjecting the entire firm to disqualification." (Citation and punctuation omitted.) *Hodge*, supra, 295 Ga. at 139 (1). The rationale behind this rule is "that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." Id. at 139-140 (1).

In this case, disqualification was necessary because Robinson's counsel is currently representing him in an action that is of the same general subject matter as James' previous work for First Key Homes, and the event underlying the current litigation grows out of an event that occurred during James' employment. Specifically, the issue in the instant action concerns a landlord/tenant legal matter

---

[3] See also *Shuttleworth v. Rankin-Shuttleworth of Ga., LLC*, 328 Ga. App. 593, 595 (1) (759 SE2d 873) (2014) (noting generally that under Rule 1.9 (a) of the Georgia Rules of Professional Conduct found in Bar Rule 4-102 (d), "a lawyer is disqualified from representing a party against a former client in a matter that is substantially related to the lawyer's prior representation").

7

involving maintenance requests and complaints, and a tenant's allegations regarding damages to his home. James' prior employment for First Key Homes also included handling landlord/tenant legal matters, maintenance requests, complaints, and First Key Homes' responses to such requests and complaints. Most notably, as part of her employment with First Key Homes, James routinely reviewed residents' legal complaints and collaborated with the property manager and outside counsel to prepare for litigation, and worked with outside counsel to settle legal claims before litigation commenced. James also helped to gather discovery, and she was privy to First Key Homes' confidential policies and affairs. What is more, the record is clear that the facts in the underlying matter arose while James was still employed as in-house counsel for First Key Homes. James testified that she worked for First Key Homes from February 2018 until September 2019. Robinson alleged in his complaint that he discovered the presence of mold in his home in August 2019 and that he complained about the mold to the defendants that same month. Finally, we note that Robinson did not argue below that First Key Homes waived the conflict of interest either in writing or by its conduct, and the record does not show that First Key Homes waived the conflict in any manner. Therefore, we conclude that James has an actual conflict of interest which is imputed to her entire firm and requires its

disqualification. See *Shuttleworth v. Rankin-Shuttleworth of Ga., LLC*, 328 Ga. App. 593, 595-596 (1) (a) (759 SE2d 873) (2014) (holding that the attorney's prior representation which involved participation in litigation regarding a membership agreement for an insurance company and the pending litigation which involved a former partner's efforts to buy out another partner's share in the company "encompasse[d] the same general subject matter and grew out of events that occurred during the time [the attorney] represented the plaintiffs, creating an appearance of impropriety"); see also *Crawford W. Long Mem. Hosp. of Emory Univ. v. Yerby*, 258 Ga. 720, 721-722 (3) (373 SE2d 749) (1988) (reversing the trial court's denial of a motion to disqualify counsel where the current medical malpractice claim was "of the same general subject matter" as the prior medical malpractice claims that the attorney defended on the hospital's behalf and "[grew] out of an event that occurred during the time of such representation").

Although the trial court imposed certain screening procedures modeled after the American Bar Association Model Rules, we conclude that such screening procedures were impermissible in this case. While the Supreme Court of Georgia has permitted the use of screening procedures in situations where a *nonlawyer* has a

conflict of interest,[4] our research has uncovered no caselaw from this Court or the Supreme Court of Georgia permitting the implementation of screening procedures to overcome the appearance of impropriety where a lawyer has a conflict of interest. Instead, the Supreme Court of Georgia has been clear that "if one attorney in a firm has an actual conflict of interest, we impute that conflict to all the attorneys in the firm, subjecting the entire firm to disqualification." (Citation omitted.) *Hodge*, supra, 295 Ga. at 139 (1). The reasoning underlying this rule applies especially so in this case, where the record shows that James was privy to First Key Homes' confidential policies, strategic considerations, and internal procedures and that she acquired information from First Key Homes' confidential files relating to its operations. See *Jones v. Jones*, 258 Ga. 353, 354 (369 SE2d 478) (1988) ("[D]isqualification is always justified and indeed mandated, even when balanced against a client's right to an attorney of choice, [where there is an] appearance of impropriety coupled with a conflict of interest or jeopardy to a client's confidences. In these instances, it is clear that the disqualification is necessary for the protection of the client.") (citation

---

[4] See *Hodge*, supra, 295 Ga. at 140 (1) ("[W]e join today with the majority of professional legal ethics commentators, ethics tribunals, and courts, which have concluded that nonlawyer screening is a permissible method to protect confidences held by nonlawyer employees who change employment.") (citation and punctuation omitted).

omitted). Therefore, because James has a conflict of interest that is imputed to her entire law firm, Robinson's counsel must be disqualified from representing him in this matter.

Accordingly, for the reasons stated above, we reverse the trial court's order denying the defendants' motion to disqualify the Robinson's counsel.

*Judgment reversed. Rickman, C. J., and Pipkin, J., concur*.